UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────

DARRYL S. SCOTT,

        Petitioner,

        -v-                            08-CV-0145(MAT)
                                             **ORDER**

D. UNGER, Superintendent,

        Respondent.

───────────────────────────────

## I.   Introduction

*Pro se* petitioner Darryl S. Scott ("petitioner") has filed a timely petition for habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Genesee County Court of Burglary in the Second Degree (N.Y. Penal L. § 140.25(2)) and Criminal Mischief in the Fourth Degree (N.Y. Penal L. § 145.00(1)). Petitioner's conviction was entered on March 12, 2001, following a jury trial before Judge Robert C. Noonan. He was subsequently sentenced to a determinate prison term of twelve years for the burglary charge and a concurrent sentence of one year for the mischief charge.

## II.  Factual Background and Procedural History

On September 1, 1999, petitioner and three accomplices, Jeffery McQueen ("McQueen"), Dominique Rosemund ("Rosemund"), and Johnnie Small ("Small") burglarized the home of Daniel Frey and Kimberly Hanson ("the victims") in Oakfield, New York, stealing approximately $2,800 in cash and silver coins. Petitioner and his co-defendants were charged with second-degree burglary, fourth-

degree grand larceny, and fourth-degree criminal mischief. R. 2.[1]

Rosemund and Small pleaded guilty, while petitioner and McQueen proceeded to a joint trial in Genesee County Court. Small testified for the prosecution at petitioner's trial.

Petitioner and McQueen claimed that on September 1, 1999, the day of the burglary, they were driving to the Federal Holding Center in Batavia, New York, to visit petitioner's cousin, and had no knowledge of a burglary. The defense called three witnesses in support of the joint defense.

The jury found petitioner and McQueen guilty of the burglary and mischief charges, and acquitted both co-defendants of the grand larceny charge. R. 1154-1155. The court then sentenced petitioner as a second violent felony offender to an aggregate term of imprisonment of twelve years, determinate. R. 1185, 1190.

Petitioner moved to vacate his judgment of conviction on April 2, 2003, pursuant to N.Y. Crim. Proc. L. ("C.P.L.") 440.10, on the grounds that: (1) the prosecution failed to disclose the plea agreement between Small and the District Attorney's Office; and (2) Small lied at trial about the contents of the agreement. See Respondent's Exhibits ("Ex.") A. The county court denied petitioner's argument on the merits. See Decision and Order of Genesee County Court, Ind. No. 4216, dated 5/9/2003; Ex. C. Leave to appeal that decision was denied by the Appellate Division on

---

[1] Citations to "R.__" refer to the Record on Appeal, which contains the trial transcript.

October 21, 2003. <u>See</u> Decision of the Appellate Division (Justice L. Paul Kehoe), Docket No. KA-03-01508, dated 10/21/2003.

Through counsel, petitioner then filed a brief to the Appellate Division, Fourth Department, raising the following issues for appeal: (1) ineffective assistance of trial counsel/conflict of interest; (2) the verdict was repugnant; (3) prosecutorial misconduct/<u>Brady</u> violation; (4) petitioner was deprived of a fair trial when the trial court denied his motion for severance; and (5) a <u>Batson</u> violation. Ex. D. In addition, petitioner submitted a *pro se* brief in which he claimed that: (6) the prosecutor committed a <u>Batson</u> violation; (7) insufficiency of the evidence; (8) the prosecution failed to corroborate Small's testimony; (9) the court's jury charge was erroneous in several respects; and (10) the county court erred in denying petitioner's C.P.L. § 440.10 motion. Ex. E. The Fourth Department unanimously affirmed the judgment of conviction. <u>People v. Scott</u>, 32 A.D.3d 1178 (4th Dept. 2006); <u>lv. denied</u>, 8 N.Y.3d 884 (2007)

On February 15, 2008, petitioner filed the instant petition for habeas corpus (Dkt. #1), wherein petitioner seeks relief on the following grounds: (1) a <u>Brady</u> violation; (2) the conviction was obtained by the prosecutor's knowing use of perjured testimony; (3) a <u>Batson</u> violation; (4) ineffective assistance of trial counsel/conflict of interest; (5) a Fourth Amendment violation; (6) legally insufficient evidence to support the burglary

conviction; (7) the prosecution failed to corroborate Small's testimony; (8) the trial court's jury charge was erroneous; (9) prosecutorial misconduct; and (10) the trial court erred in denying petitioner's motion for severance. Petition ("Pet.") ¶ 12 (Grounds One - Ten).

For the reasons that follow, I find that petitioner is not entitled to the writ, and the petition is dismissed.

## III. Discussion

### A. General Principles Applicable to Federal Habeas Review

#### 1. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S.

362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision. Williams, 529 U.S. at 412; accord Sevencan v. Herbert, 342 F.3d 69, 73-74 (2d Cir. 2002), cert. denied, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. Williams, 529 U.S. at 413; see also id. at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." Aparicio v. Artuz, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." Id. This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by

clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

**B.   Merits of the Petition**

    **1.   <u>Brady</u> Violation; Use of Perjured Testimony**

Petitioner contends that the prosecutor violated his obligation under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963)[2], by withholding from petitioner Johnnie Small's cooperation agreement. Pet. ¶ 12, Ground One. The § 440 court denied petitioner's contention on the merits, finding that it was unclear whether Small received leniency because of his cooperation with the prosecution in petitioner's case or for his confession and guilty plea. R. 1224-1225. The court further noted that the prosecution had disclosed Small's statement to the defense, as defense counsel was able to cross-examine Small on that matter, and defense counsel argued the issue in his summation. R. 1223.

---

[2] The suppression by prosecution of evidence favorable to an accused upon request violates due process where evidence is material either to guilt or to punishment, irrespective of good faith or bad faith of prosecution. <u>Brady v. Maryland</u>, 373 U.S. 83 (1963)

To prove a <u>Brady</u> violation, a habeas petitioner must establish that: (1) the evidence at issue was favorable to the accused, either because it was exculpatory or could have impeached a prosecution witness; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued from the withholding. <u>Moore v. Illinois</u>, 408 U.S. 786, 794-95 (1972); <u>see also</u> <u>Strickler v. Greene</u>, 527 U.S. 263, 281-82 (1999). Evidence is material only if there is a reasonable probability that disclosure of the evidence to the defense would have changed the result of the proceeding. <u>United States v. Bagley</u>, 473 U.S. 667, 682 (1985). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 682.

Neither the Second Circuit nor the Supreme Court has specified the timing of disclosure that <u>Brady</u> requires, but it is clearly established that "disclosure prior to trial is not mandated." <u>Leka v. Portuondo</u>, 257 F.3d 89, 100 (2d Cir. 2001) ("It is not feasible or desirable to specify the extent or timing of disclosure <u>Brady</u> and its progeny require, except in terms of the sufficiency, under the circumstances, of the defense's opportunity to use the evidence when disclosure is made.") (citations omitted). All that is required by Supreme Court and Second Circuit precedent is that Brady material be disclosed "in time for its effective use at trial." <u>United States v. Gil</u>, 297 F.3d 93, 105 (quoting <u>United</u>

States v. Coppa, 267 F.3d 132, 142 (2d Cir. 2001)). Indeed, the record reflects that whatever agreement that was entered into by Small and the District Attorney's office was used by counsel in his cross-examination and in his summation arguments. R. 931-938, 1053. Assuming the evidence was impeaching, defense counsel was still able to make "effective use" of that evidence at petitioner's trial. Accordingly, petitioner has failed to demonstrate the prosecutor "suppressed" Small's cooperation agreement within the meaning of Brady v. Maryland, 373 U.S. 83, supra; accord, e.g., Goston v. Rivera, 462 F.Supp.2d 383, 395 (W.D.N.Y. 2006) ("Even if the Court were to assume that [the witness'] grand jury minutes constituted Brady material, there was not a 'suppression' of the material simply because defense counsel did not receive it prior to trial.")

In a related claim, petitioner argues that Small gave false testimony regarding the contents of a "release under supervision" agreement Pet. ¶ 12, Ground Two. There is no evidence in the record, nor does petitioner point to anything outside of the record, to support his contention that such an agreement existed, or that Small lied about the terms of such an agreement in his trial testimony. Furthermore, Small was never directly questioned about a release agreement. As such, petitioner has not provided a foundation upon which a due process claim can be made, and a federal court may not grant habeas relief based upon

unsubstantiated conclusions, opinions, or speculation. <u>Wood v. Bartholomew</u>, 516 U.S. 1, 8 (1995) (federal courts should not grant "habeas relief on the basis of little more than speculation with slight support"); <u>see</u> <u>Osinoiki v. Riley</u>, CV-90-2097, 1990 WL 152540, at *2-3 (E.D.N.Y. Sept.28, 1990) (conclusory statements based on speculation "are inadequate to satisfy petitioner's burden"); <u>Skeete v. People of New York State</u>, No. 03-CV-2903, 2003 WL 22709079, *2 (E.D.N.Y. Nov.17, 2003) (vague, unsupported allegations of constitutional violations and errors during alien's state trial did not assert a viable habeas claim.); <u>compare</u> <u>Napue v. Illinois</u>, 360 U.S. 264 (1959) (there can be a due process violation based on a witness' false testimony when the prosecutor knows the testimony is false and the false testimony likely had an impact on the jury's verdict.).

Petitioner's <u>Brady</u> and due process claims are therefore denied, as the state court's decision did not contravene Supreme Court law.

### 2.   <u>Batson</u> Violation

Petitioner next claims, as he did on direct appeal, that the prosecutor committed a Batson violation by challenging the only African-American prospective juror on the panel. Pet. ¶ 12, Ground Three. The Appellate Division rejected petitioner's claim on the merits, finding that the court properly determined that the

prosecution articulated a race-neutral explanation for the peremptory challenge. <u>Scott</u>, 32 A.D.3d at 1180.

In <u>Batson v. Kentucky</u>, the Supreme Court held that the Equal Protection Clause of the Constitution prohibits a prosecutor from excluding prospective jurors "solely on account of their race or on the assumption that black jurors as a group will be unable to impartially consider the State's case against a black defendant." 476 U.S. at 89. There are three steps to a <u>Batson</u> inquiry. Initially, the opponent of a peremptory challenge must make out a *prima facia* case of discrimination. <u>Purkett v. Elem</u>, 514 U.S. 765, 767 (1995). The burden of production then shifts to the proponent of the strike to come forward with a race-neutral explanation. <u>Id.</u> "The second step of this process does not demand an explanation that is persuasive, or even plausible." <u>Id.</u> at 767-68. If a race-neutral explanation is provided, the trial court must then decide whether the opponent challenging the strike has proved purposeful discrimination. <u>Id.</u> at 767. That determination is a finding of fact entitled to deference by the reviewing court. <u>Hernandez v. New York,</u> 500 U.S. 352, 364-66 (1991); see <u>Purkett</u>, 514 U.S. at 769 ("[I]n habeas proceedings in federal courts, the factual findings of state courts are presumed to be correct, and may be set aside, absent procedural error, only if they are 'not fairly supported by the record.'") (citation omitted); <u>United States v. Douglas</u>, 525 F.3d 225, 239 (2d Cir. 2008) ("Since a

finding as to whether there was intentional discrimination is a finding of fact, and the trial court findings in this context largely will turn on evaluation of credibility, the trial court's finding as to whether the prosecutor's reason was race-neutral may be overturned only if that finding is clearly erroneous.") (citation omitted); <u>see generally</u> 28 U.S.C. §§ 2254(d)(2), (e)(1).

In the instant case, the prosecutor peremptorily challenged the sole African-American juror on the panel, to which defense counsel then made a <u>Batson</u> objection. The prosecutor's proffered reasons for striking that juror was because her sister and close friend, Lester Gephart ("Gephart"), had been prosecuted in Genesee County, by the same District Attorney that was prosecuting the petitioner.[3] The trial court found that it was a non-pretextual, race-neutral reason for the challenge. R. 327-332.

The Second Circuit has held that race or gender neutral explanations based on the fact that a relative of a prospective juror had been arrested or convicted of a crime are acceptable under <u>Batson</u>. <u>See</u> <u>Green v. Travis</u>, 414 F.3d 298, 300-01 (2d Cir. 2005) (accepting as a satisfactory race-neutral reason for peremptory strike the prosecutor's explanation that the prospective jurors had relatives who had been convicted of drug offenses); <u>Jordan v. Lefevre</u>, 293 F.3d 587, 594 (2d Cir. 2002) ("Nor do we see

---

[3] In addition, the *voir dire* minutes also indicate that, at the time of jury selection, there was a also pending prosecution against Gephart's child. Gephart was prosecuted in Genesee County and at the time, was serving a prison term for a sexual offense. R. 326.

error in the district court's finding that [the prosecutor's] exercise of five of the State's peremptory challenges against blacks was not motivated by their race. [The prosecutor] offered race-neutral reasons for each of those challenges. It was not impermissible for the district court to credit his explanations that he viewed [one juror] as potentially having animosity toward the police because of [that juror]'s view that the police had unfairly arrested and beaten his brother [.]"); U.S. v. Lawal, 129 F.3d 114 (Table) 1997 WL 664794 (2d Cir. 1997) ("Both jurors were challenged on the basis of family criminal histories, and one juror was also challenged on the basis of his age and demeanor. These bases are well-accepted, facially race-neutral reasons.") (unpublished opinion).

Here, the prosecutor's proffered reason was race-neutral, and not otherwise vague or facially questionable. Green, 414 F.3d at 301 (citing, *inter alia*, Batson, 476 U.S. at 98 (holding that in articulating race-neutral justifications for exercising peremptory strikes, the prosecutor may not simply deny "that he had a discriminatory motive" or affirm his "good faith" in selecting jurors, but rather must "articulate a neutral explanation related to the particular case to be tried")). The record supports the prosecutor's reason for peremptorily striking the juror in question, given her close relationships with at least two

individuals prosecuted and convicted by the Genesee County District Attorney.

Turning to the third step of the <u>Batson</u> inquiry, a trial court's finding as to whether the prosecutor intentionally discriminated on the basis of race when exercising a peremptory strike is a factual finding entitled to appropriate deference by a reviewing court. <u>Batson</u>, 476 U.S. at 98 n. 21 (citation omitted); <u>accord, e.g.</u>, <u>Jordan v. Lefevre</u>, 293 F.3d at 593. Since the trial judge's conclusions during the type of inquiry contemplated by <u>Batson</u> "largely will turn on evaluation of credibility," the Supreme Court has instructed that reviewing courts "ordinarily should give those findings great deference." <u>Id.</u> (citing <u>Anderson v. Bessemer City</u>, 470 U.S. 564, 575-76 (1985)). Petitioner has provided no basis for this Court to reject the trial judge's findings. The trial court heard argument on the peremptory strike, and gave defense counsel the opportunity to respond. R. 330-332. In sum, the trial court conducted a "meaningful inquiry into 'the decisive question ... whether counsel's race-neutral explanation for a peremptory challenge should be believed.'" <u>Jordan v. LeFevre</u>, 206 F.3d 196, 201 (2d Cir. 2000) (quoting <u>Hernandez v. New York</u>, 500 U.S. 352, 365 (1991)).

In sum, the state court's factual determination that there was no intentional discrimination is entitled to a presumption of correctness, and petitioner has not rebutted that presumption with

any evidence. Accordingly, the state court's determination was not an unreasonable determination in light of the facts presented, and petitioner's <u>Batson</u> claim is denied.

### 3. Ineffective Assistance of Trial Counsel

Petitioner claims, as he did on direct appeal, that: (1) his first attorney, Joseph Cox, Esq. ("Cox"), had a conflict of interest because he jointly represented petitioner and his co-defendant, McQueen; (2) Cox had failed to inform petitioner of the dangers of joint representation; and (3) Cox's pretrial motions were insufficient. Pet. ¶ 12, Ground Four. The Appellate Division rejected petitioner's contention on the merits. <u>Scott</u>, 32 A.D.3d at 1179.

In order to prevail on a claim of ineffective assistance of counsel, a petitioner must demonstrate both that his attorney's representation was unreasonable under the "prevailing professional norms," and that there is a reasonable probability that, but for his attorney's errors, "the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984). A criminal defendant's Sixth Amendment right to assistance of counsel includes a right to conflict-free representation. <u>Strickland</u>, 466 U.S. at 688 (citing <u>Cuyler v. Sullivan</u>, 446 U.S. 335, 346 (1980)). The Second Circuit has explained,

> Under <u>Strickland</u>, if a defendant establishes
> that her attorney had a potential conflict of
> interest, in order to prove that the conflict
> resulted in a violation of her Sixth Amendment

14

right to effective assistance of counsel, she
must demonstrate prejudice. However, prejudice
is presumed when a defendant establishes that
her attorney had an actual conflict of
interest that adversely affected the
attorney's performance. An attorney has an
actual, as opposed to a potential, conflict of
interest when, during the course of the
representation, the attorney's and defendant's
interests "diverge with respect to a material
factual or legal issue or to a course of
action."

Winkler v. Keane, 7 F.3d 304, 307 (2d Cir. 1993) (quoting Cuyler,
466 U.S. at 356 n.3).

Therefore, a petitioner must "demonstrate that some plausible
alternative defense strategy or tactic might have been pursued, and
that the alternative defense was inherently in conflict with or not
undertaken due to the attorney's other loyalties or interests."
United States v. Schwarz, 283 F.3d 76, 92 (quotations omitted).

Here, petitioner has not identified a plausible alternative
defense strategy or tactic that Cox failed to pursue because of his
conflicted loyalties. Petitioner and his co-defendant did not have
antagonistic defenses and thus, petitioner had no viable severance
claim. See infra III.B.7. Moreover, the record is insufficient as
to whether Cox informed the petitioner about the dangers of joint
representation. However, any such danger in the joint
representation was harmless because Cox was ultimately relieved and

petitioner and McQueen were each appointed new attorneys before trial.[4]

Finally, petitioner complains that Cox was ineffective for failing to move for a suppression/probable cause hearing. Because petitioner's ineffective assistance claim is based on an alleged failure to raise a Fourth Amendment issue, "he must also show 'that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.'" Mosby v. Senkowski, 470 F.3d 515, 519 (2d Cir. 2006) (quoting Kimmelman v. Morrison, 477 U.S. 365, 375 (1986)). Petitioner has failed to show that his suppression motion would have been successful. See, e.g., Mosby v. Senkowski, 470 F.3d at 519-21 & n. 3 (analyzing the merits of the suppression claim in a way that suggests that the court interpreted "meritorious" to mean that the suppression claim would actually succeed); Maldonado v. Burge, 697 F.Supp.2d 516, 528 (S.D.N.Y. 2010) ("The weight of the authority and the logic of Kimmelman suggest that petitioner must show, at minimum, a reasonable probability that the suppression motion would succeed, and quite possibly that [ ] the suppression motion would in fact succeed.").

_____

[4] Prior to jury selection, Cox informed the court that he had been diagnosed with multiple sclerosis shortly after he began representing petitioner, and that he suffered various ailments as a result of the disease and his medications. As a result, he felt that his symptoms could negatively impact the jury and was concerned about his physical ability to defend petitioner at trial. The court then relieved Cox from representing both petitioner and McQueen. R. 77-105.

The record indicates that petitioner's second attorney filed a motion for leave to submit additional motions on November 30, 2000. R. 153-154.  Those motions included a new motion to suppress physical evidence and/or inculpatory statements made by petitioner at the time of his arrest on the basis of a Fourth Amendment violation. R. 157-158. The trial court, in rejecting counsel's request, stated that, "although original counsel's motion to suppress statements was insufficient on its face to warrant a hearing, nothing now offered by the defense would demonstrate that [Cox] declined to aggressively pursue suppression for anything other than a legitimate recognition that such motion would ultimately fail."  R. 177.  Petitioner thus cannot demonstrate prejudice as a result of Cox's omission, as the trial court impliedly rejected the merits of the revised motion to suppress. See e.g., McCants v. McCoy, No. 00-CV-6444L, 2008 WL 4852681, *6 (W.D.N.Y. Nov. 6, 2008).  ("McCants has failed to show that there is a reasonable probability that a suppression motion would have been successful. Therefore, he has not shown that trial counsel's decision to forego such an application prejudiced him.")

Moreover, it is worth noting that no part of petitioner's argument, as presented in the instant habeas petition or in his appellate brief, alleges how or why a suppression motion would have been successful; he merely asserts that counsel was deficient for not filing one.  The Court thus cannot conclude that Cox's failure

to seek a suppression/probable cause hearing fell outside the category of "omissions by counsel that might be considered sound trial strategy." Henry v. Poole, 409 F.3d 48, 63 (2d Cir. 2005).

For the aforementioned reasons, petitioner has not shown that the Appellate Division's determination was contrary to or an unreasonable application of Strickland. This claim is therefore denied.

### 4. Sufficiency of the Evidence

Petitioner claims, as he did on direct appeal, that the evidence was legally insufficient to establish that he intended to commit a crime inside of the victim's home. Pet. ¶ 12, Ground Six. The Appellate Division rejected this argument, as well as the remainder of petitioner's *pro se* contentions on appeal, on the merits, without opinion. Scott, 32 A.D.3d at 1180.

A petitioner challenging the sufficiency of the evidence of his guilt in a habeas corpus proceeding "bears a very heavy burden." Fama v. Commissioner of Correctional Services, 235 F.3d 804, 813 (2d Cir. 2000). Habeas corpus relief must be denied if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979) (emphasis in original). This sufficiency-of-evidence "inquiry does not focus on whether the trier of fact made the correct guilt or innocence determination,

but rather whether it made a rational decision to convict or acquit." Herrera v. Collins, 506 U.S. 390, 402 (1993).

Under the Jackson standard for reviewing evidentiary sufficiency, "the assessment of the credibility of witnesses is generally beyond the scope of review." Schlup v. Delo, 513 U.S. 298, 330 (1995); accord Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996) ("[A]ssessments of the weight of the evidence or the credibility of witnesses are for the jury and not grounds for reversal on [habeas] appeal."). The court must determine "whether the jury, drawing reasonable inferences from the evidence, may fairly and logically have concluded that the defendant was guilty beyond a reasonable doubt ... view [ing] the evidence in the light most favorable to the government, and constru [ing] all permissible inferences in its favor." United States v. Carson, 702 F.2d 351, 361 (2d Cir. 1983) (internal citations omitted), cert. denied sub nom. Mont v. United States, 462 U.S. 1108 (1983). A federal court reviewing an insufficiency-of-the-evidence claim must look to state law to determine the elements of the crime. Quartararo v. Hanslmaier, 186 F.3d 91, 97 (2d Cir. 1999) (citation omitted), cert. denied, 528 U.S. 1170 (2000).

Under New York state law, a person is guilty of Burglary in the Second Degree when he knowingly enters or remains unlawfully in a building with the intent to commit a crime therein, and the building is a dwelling. See N.Y. Penal L. § 140.25(2). Johnnie

Small testified that petitioner and McQueen planned the burglary, and that they chose the victims' home because it had a "big safe" inside. R. 901-910. The evidence also established that the victims' front door had been shimmed open and the house ransacked, with furniture upended and mattresses turned over, and that $2,800 was missing from the victims' safe. R. 807-814, 843-847. Petitioner and his accomplices were arrested not far from the crime scene in a vehicle matching the physical description and the partial license plate number of the one that had been observed near the victim's house. R.650-654, 681-681(a)[5], 841-842. The vehicle contained a pry iron in the back. R. 759-760. In sum, there was sufficient evidence for any rational trier of fact to find the elements of Burglary in the Second Degree. The state court's rejection of petitioner's legal insufficiency claim, therefore, was neither contrary to nor an unreasonable application of <u>Jackson v. Virginia</u>. Habeas relief on this ground is therefore denied.

### 5. **Erroneous Jury Charges**

Petitioner argues that the trial court's charge to the jury was erroneous because: (1) petitioner was entitled to a circumstantial evidence charge; and (2) the court improperly charged the jury on the theory of accomplice liability. Pet. ¶ 12, Ground Eight. The Appellate Division rejected petitioner's claims on the merits. <u>Scott</u>, 32 A.D.3d at 1179.

---

[5] The Record on Appeal contains two consecutive pages numbered 681. For purposes of clarification, the Court will refer to the second as R. 681(a).

It is well-settled that the propriety of a state court's jury instructions is generally a matter of state law that does not raise a federal constitutional question. See Estelle v. McGuire, 502 U.S. 62, 71-72 (1991); Cupp v. Naughten, 414 U.S. 141, 146 (1973). Rather, to be entitled to habeas relief, a petitioner must show "not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Cupp, 414 U.S. at 146. The central question, therefore, is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process." Id. at 147.

As to the first aspect of petitioner's claim, he has not shown that he was entitled to a circumstantial evidence charge. Under New York law, "[w]henever a case relies wholly on circumstantial evidence to establish all elements of the charge, the jury should be instructed, in substance, that the evidence must establish guilt to a moral certainty." People v. Daddona, 81 N.Y.2d 990, 992 (1993). Where, as here, there existed both direct and circumstantial evidence, "the court need not so charge the jury." Id. The direct evidence of petitioner's guilt included the accomplice testimony of Small that petitioner, McQueen, Rosemund, and another accomplice acted in concert to commit the burglary. Petitioner's claim that Small had no knowledge of the burglary, see Pet. ¶ 12, Ground Eight, is belied by the record. Small testified

to the details of the burglary, which he had learned from petitioner and McQueen. R. 910-913. The trial court therefore properly denied petitioner's request for a moral certainty charge. See People v. Rosica, 199 A.D.2d 733 (3rd Dept. 1993) (holding that moral certainty charge need not be given where direct evidence is given through an accomplice's testimony); see R. 1041.

Petitioner next complains that the trial court's accomplice liability instruction was erroneous with respect to accomplice liability because he used the phrase, "state of mind" rather than "mental culpability" as provided by N.Y. Penal L. § 20.00.[6] The trial court's instruction reads, in pertinent part:

> Our law defines the circumstances under which one person may be criminally liable for the conduct of another. That definition is as follows. When one person engages in conduct which constitutes an offense, another is criminally liable for such conduct when acting with a state of mind required for the commission of that offense he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct.

R. 1131-1132.

The Court finds that this substitution did not alter the definition of accomplice liability. In fact, the trial court's charged mirrored the New York Pattern Jury Instructions, see CJI2d

---

[6] "When one person engages in conduct which constitutes an offense, another person is criminally liable for such conduct when, acting with the mental culpability required for the commission thereof, he solicits, requests, commands, importunes, or intentionally aids such person to engage in such conduct."  N.Y. Penal L. § 20.00.

[NY] Accessorial Liability (2002), and there is no evidence that the trial court's jury instruction misstated state law. Petitioner has thus not demonstrated a violation of a constitutional right and habeas relief does not lie for this ground.

In sum, neither of petitioner's challenges to the trial court's jury charge rise to the level of constitutional error. The state court's rejection of this claim then, was not contrary to or an unreasonable application of Supreme Court law. This claim is denied.

### 6. Prosecutorial Misconduct

Petitioner next avers that the prosecutor made inflammatory remarks during his summation in which he vouched for a witness (Small), and told the jury that Small's testimony corroborated the other witnesses' and that "they corroborate[d] him." Pet. ¶ 12, Ground Nine. The Appellate Division held that petitioner was not deprived of a fair trial by prosecutorial misconduct. Scott, 32 A.D.3d at 1180.

In order to obtain habeas relief based upon the misconduct of a prosecutor, "[i]t is not enough that the prosecutor's remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks and citation omitted). Rather, a constitutional violation will be found only when the prosecutor's remarks "'so infected the trial with unfairness as to make the resulting conviction a denial of due

process.'" <u>Gonzalez v. Sullivan</u>, 934 F.2d 419, 424 (2d Cir. 1991)
(quoting <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 643 (1974)).
Moreover, a prosecutor's remarks during summation are grounds for
reversal "only when the remarks caused 'substantial prejudice' to
the defendant." <u>Id.</u> (citations omitted). Whether the comments
caused substantial prejudice to the petitioner is to be assessed by
considering "'the severity of the misconduct; the measures adopted
to cure the misconduct; and the certainty of conviction absent the
improper statements.'" <u>Floyd v. Meachum</u>, 907 F.2d 347, 355 (2d Cir.
1990) (quoting <u>United States v. Modica</u>, 663 F.2d 1173, 1181
(2d Cir.1981), <u>cert. denied</u>, 456 U.S. 989 (1982)).

Here, petitioner claims that the prosecutor violated due
process by vouching for the credibility of Small. During defense
counsel's summation, he characterized Small as a "pretty pathetic
figure" with "great disabilities", "a malleable . . . flexible
witness" who would "say anything because he's going to get out of
jail." R. 1053, 1057. In response, the prosecutor argued that Small
"was not found to be inconsistent virtually at all" and cited
examples. R. 1091. It is true that a prosecutor is not permitted
to vouch for the credibility of a government witness by relying on,
or implying the existence of, extraneous proof. See <u>United States
v. Perez</u>, 144 F.3d 204, 210 (2d Cir. 1998). The type of commentary
employed in response to the defense's summation, however, has
been held to be constitutionally sound on habeas review. <u>See, e.g.</u>,

<u>Ayala v. Ercole</u>, 2007 WL 1135560, at *17 (E.D.N.Y. Apr.17, 2007) ("[A] prosecutor is permitted to respond in an appropriate manner to attacks on the government's case by defense counsel during his summation, including attacks on the credibility of government witnesses.") (collecting cases); <u>Everett v. Fischer</u>, 2002 WL 1447487, at *3 (E.D.N.Y. July 3, 2002) (prosecutor's comments as to the credibility of government witnesses a "fair response" to defense counsel's attack on the credibility of those witnesses); <u>see also</u> <u>Shariff v. Artuz</u>, 2001 WL 135763, at *8 (S.D.N.Y. Feb.16, 2001) ("Although the government may not vouch for a witness's credibility, it may respond to an argument that impugns the government's integrity or the integrity of the case.").

Nor was it improper for the prosecutor to argue that Small's testimony was corroborated by other witnesses and those witnesses corroborated Small's testimony. R. 1092. In particular, the prosecutor cited the following examples: (1) Small testified as to who was in the vehicle, and those same individuals were found in the vehicle by police; (2) one of the victim's testified that his coins had been stolen from his safe, and Small testified that Rosemund came running to the car from the house with coins; and (3) Small testified that sometime after the burglary, one of the occupants of the car threw something out of the window, and a county sheriffs's employee testified that he found coins on Route 77 near Indian Falls. R. 1092-1093. Again, the prosecutor did not

vouch for Small, but rather asked the jury to consider this corroborative evidence in determining whether Small was credible.

For the aforementioned reasons, the Appellate Division's determination was not an unreasonable application of, or contrary to clearly established federal law, and habeas relief is denied on this ground.

### 7. Erroneous Denial of Severance Motion

Petitioner contends that the trial court denied his right to a fair trial by rejecting his severance motion. Pet. ¶ 12, Ground Ten. The Appellate Division held that the "County Court did not abuse its discretion in denying defendant's severance motion." Scott, 32 A.D.3d at 1180.

Following the re-assignment of counsel, see supra III.B.3.n4, petitioner's new attorney was given until November 17, 2000 to file new motions. When counsel did not file motions by that date, the trial court confirmed that petitioner's trial would commence on January 2, 2001. R. 149. On November 30, 2000, counsel submitted several late motions, including one for severance, and argued that petitioner's previous attorney was debilitated and thus submitted insufficient motions, failing entirely to file a motion for severance. R. 160-167. The trial court denied the motion to file the late severance motion, and concluded that severance would not have been warranted because "nothing in [the defendants']

statements to the police would have inculpated the other so as to require severance." R. 175-177.

"To grant federal habeas corpus relief on the basis of an improper denial of severance, a federal court must find that the joinder was so prejudicial as to deny the petitioner a fair trial." Boddie v. Edwards, No. 97 Civ. 7821 MGC, 2005 WL 914381, *7 (S.D.N.Y. April 20, 2005) (citing Grant v. Hoke, 921 F.2d 28, 31 (2d Cir. 1990)). "By contrast, '[i]ncidental prejudice, which is almost always present when multiple defendants who played different roles are tried together, will not be enough.'" Id. (quoting Mercedes v. Herbert, 01 Civ. 1359(DC), 2002 WL 826809, at *5 (S.D.N.Y. Apr. 30, 2002). A petitioner must therefore establish that he was "severely prejudiced," and not merely "that he might have had a better chance for acquittal at a separate trial." Grant, 921 F.2d at 31 (internal quotation omitted). "A separate trial is required only upon a showing that 'the jury, in order to believe the core of testimony offered on behalf of [one] defendant, must necessarily disbelieve the testimony offered on behalf of his codefendant.'" Boddie, 2005 WL 914381 at *7 (quoting Grant, 921 F.2d at 31).

Moreover, "[t]here is a strong presumption of a joint trial where two (or more) defendants are charged with having committed the same crime." Castro v. Fisher, No. 04 Civ.0346 DLC AJP, 2004 WL 1637920, *18 (S.D.N.Y. July 23, 2004) Report and Recommendation

adopted, 2004 WL 2525876 (S.D.N.Y. Nov. 8, 2004). As the Supreme

Court has reasoned:

> [t] would impair both the efficiency and the
> fairness of the criminal justice system to
> require ... that prosecutors bring separate
> proceedings, presenting the same evidence
> again and again, requiring victims and
> witnesses to repeat the inconvenience (and
> sometimes trauma) of testifying, and randomly
> favoring the last-tried defendants who have
> the advantage of knowing the prosecution's
> case beforehand. Joint trials generally serve
> the interests of justice by avoiding
> inconsistent verdicts and enabling more
> accurate assessment of relative
> culpability-advantages which sometimes operate
> to the defendant's benefit. Even apart from
> these tactical considerations, joint trials
> generally serve the interests of justice by
> avoiding the scandal and inequity of
> inconsistent verdicts.

Richardson v. Marsh, 481 U.S. 200, 210 (1987).

Here, petitioner has not made a showing of substantial

prejudice as to entitle him to habeas relief. Rather than

explaining how his defense was fundamentally irreconcilable with

McQueen's, petitioner makes the bare allegation that he was not

culpable for the crime for which he was convicted. See Pet. ¶ 12,

Ground Ten. The record indicates that both petitioner and McQueen

denied their participation in the burglary and made statements to

police that were fundamentally similar. R. 10, 156, 1165. Neither

petitioner nor McQueen accused the other of committing the burglary

while denying their own guilt. Petitioner has thus not set forth a

factual basis to support his argument that he was denied a fair

trial when the county court denied his motion for severance. Accordingly, the Appellate Division's rejection of this claim did not run afoul Supreme Court law, and habeas relief is denied on this ground.

### 8. Petitioner's Remaining Claims are Not Cognizable on Habeas Review

#### a. Fourth Amendment Violation

Petitioner contends that his conviction was obtained pursuant to an unlawful arrest in violation of the Fourth Amendment. Pet. ¶, Ground Five.

In general, state court defendants are barred from obtaining habeas relief based upon Fourth Amendment claims. "Where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." Stone v. Powell, 428 U.S. 465, 494, (1976) (footnotes omitted). The Second Circuit has noted that Stone requires only that "the state have provided the opportunity to the state prisoner for full and fair litigation of the Fourth Amendment claim." Gates v. Henderson, 568 F.2d 830, 839 (2d Cir. 1977) (en banc), cert. denied, 434 U.S. 1038 (1978) (emphasis added). A federal court may undertake habeas review only in one of two instances: (1) "if the state provides no corrective procedures at all to redress Fourth Amendment violations," or (2) if "the state provides the process

but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process. . . ." Id. at 840; accord Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1992).

A petitioner receives a "full and fair opportunity" to litigate his Fourth Amendment claim where the state provides a "'statutory mechanism' for suppression of evidence tainted by an unlawful search and seizure." McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69 (2d Cir. 1983). Here, New York clearly affords defendants the requisite corrective procedures. See N.Y. Crim. Proc. L.§ 710.10 et seq.; see also Capellan, 975 F.2d at 70 (noting that "federal courts have approved New York's procedure for litigating Fourth Amendment claims, embodied in N.Y. Crim. Proc. Law § 710.10 et seq. (McKinney 1984 & Supp.1988) as being facially adequate"). Thus, Petitioner may not raise his Fourth Amendment claim on habeas review because he was provided with the opportunity to fully adjudicate these matters in state court. The case law makes clear that the fact that he chose not to avail himself of that opportunity is of no moment, see, e.g., McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69 (2d Cir. 1983); Nunez v. Duncan, No. 01-CV-4068(JBW), 03-MISC-0066(JBW), 2003 WL 22284182, *10 (E.D.N.Y. Aug.20, 2003) ("Stone v. Powell bars review of all Fourth Amendment claims so long as the state has provided the petitioner with [an] opportunity for full and fair litigation of the claim. This barrier applies whether or not the petitioner

actually had a pretrial hearing on the issue, or whether he failed to avail himself of the opportunity to do so.") his Fourth Amendment claim still is not cognizable on habeas review.

Accordingly, the claim must be dismissed.

### b. Accomplice Corroboration

Finally, petitioner claims that the prosecution failed to corroborate the testimony of Johnnie Small pursuant to N.Y. Crim. Proc. L. § 60.22.[7] Accomplice corroboration is a matter of state law and provides no basis for federal habeas review.

Although New York's criminal procedure statute requires that an accomplice's testimony be corroborated, there is no such federal constitutional right. See Caminetti v. United States, 242 U.S. 470, 495(1917) ("[T]here is no absolute rule of law preventing convictions on the testimony of accomplices if juries believe them."). Because petitioner's claim that Small's testimony was not sufficiently corroborated raises only an issue of state law, it is not a cognizable claim on habeas review. See Martinez v. Walker, 380 F.Supp.2d 179, 183 (W.D.N.Y. 2005)("Because Martinez's claim is based solely on the New York state law accomplice corroboration requirement, it does not constitute a claim of a violation of a federal constitutional right."); Gaiter v. Lord, 917 F.Supp. 145,

---

[7] "A defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense." N.Y. Crim. Proc. L. § 60.22(1).

150 (E.D.N.Y. 1996) (dismissing habeas claim "because the Federal Constitution does not prohibit the conviction of a defendant based on the uncorroborated testimony of an accomplice")(citation omitted); Smithwick v. Walker, 758 F.Supp. 178, 186 (S.D.N.Y. 1991) ("the requirement of accomplice corroboration is solely a product of New York State law.... Under federal law, it has long been established that a defendant can indeed be convicted on the uncorroborated testimony of an accomplice."), aff'd mem., 948 F.2d 1278 (2d Cir. 1991); see generally, Estelle v. McGuire, 502 U.S. 62, 67-68 (1991) ("it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States.").

Because petitioner has failed to show an error of constitutional magnitude, this claim must be dismissed.

**IV.  Conclusion**

For the reasons stated above, Darryl Scott's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed.  Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court hereby

certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:    August 16, 2010
               Rochester, New York